IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 5:06CR0120 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Boyko |
| v. | ) | |
| | ) | |
| GEAR PUMP DISTRIBUTORS (USA), INC., | ) | <u>PLEA AGREEMENT</u> |
| | ) | |
| Defendant. | ) | |

Pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure,

and in consideration of the mutual promises set forth below, the United States Attorney's

Office for the Northern District of Ohio (hereinafter "USAO"), by and through its

undersigned attorney, and the defendant, GEAR PUMP DISTRIBUTORS (USA), INC.,

(hereinafter "Defendant"), agree as follows:

*Defendant's Initials*:

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 2 of 21

## MAXIMUM PENALTIES AND OTHER
## CONSEQUENCES OF PLEADING GUILTY

1.    **Waiver of Constitutional Trial Rights.** Defendant understands that
Defendant has the right to plead not guilty and go to trial. At trial, Defendant would be
presumed innocent, have the right to trial by jury or the Court, with the consent of the
United States, the right to the assistance of counsel, the right to confront and cross-
examine adverse witnesses and subpoena witnesses to testify for the defense, and the right
against compelled self-incrimination. Defendant understands that Defendant has the right
to an attorney at every stage of the proceeding and, if necessary, one will be appointed to
represent Defendant. Defendant understands that, if Defendant pleads guilty and that plea
is accepted by the Court, there will not be a further trial of any kind, so that by pleading
guilty Defendant waives the right to a trial.

2.    **Maximum Sentence.** The statutory maximum sentence for the count to
which Defendant agrees to plead guilty is as follows:

| *Statute* | *Maximum sentence per count* |
|---|---|
| 18 U.S.C. §§ 1343 and 1346 (Wire Fraud) | Fine: $500,000<br>Probation/Supervised release: 1-5 years |

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 3 of 21

3.     **Alternative Maximum Fine.**  The maximum fine that the Court may impose is the greater of the statutory maximum stated above or twice the gross pecuniary loss or gain from the offense of conviction.

4.     **Sentencing Guidelines.**  Defendant understands that federal sentencing law requires the Court to impose a sentence which is reasonable and that the Court must consider the advisory U.S. Sentencing Guidelines in determining a reasonable sentence.

5.     **Special Assessment.**  Defendant will be required to pay a mandatory special assessment of $400, due immediately upon sentencing.

6.     **Costs.**  The Court may order Defendant to pay the costs of prosecution and sentence, including but not limited to imprisonment, community confinement, home detention, probation, and supervised release.

7.     **Restitution.**  The Court may order Defendant to pay restitution as a condition of the sentence, probation, and/or supervised release.

8.     **Violation of Probation/Supervised Release.**  If Defendant violates any term or condition of probation or supervised release, such violation could result in a period of incarceration or other additional penalty as imposed by the Court.  In some circumstances, the combined term of imprisonment under the initial sentence and additional period of incarceration could exceed the maximum statutory term.

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 4 of 21

## ELEMENTS OF THE OFFENSE

9.     The elements of the offense to which Defendant will plead guilty are:

| 18 U.S.C. §§ 1343 and 1346: Wire Fraud | |
|---|---|
| One: | The Defendant knowingly devised or knowingly participated in a scheme or artifice to defraud by depriving another of the intangible right of honest services; |
| Two: | The Defendant did so with the intent to defraud by depriving another of the intangible right of honest services; and |
| Three: | In advancing, or furthering, or carrying out this scheme to defraud, the Defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce. |

## AGREEMENTS AND STIPULATIONS OF THE PARTIES

## GUILTY PLEA / OTHER CHARGES

10.     **Agreement to Plead Guilty.** Defendant agrees to plead guilty to the Information in this case.

11.     **Agreement Not to Bring Certain Other Charges.** The USAO will not bring any other criminal charges against Defendant, or its officers, directors, employees, affiliates, parents, and the officers, directors, and employees of such affiliates and parents, based on facts currently within the knowledge of the USAO.

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 5 of 21

## FACTUAL BASIS

12.     The parties stipulate to the following facts, which satisfy all of the elements of the offense to which Defendant agrees to plead guilty:

a.     GEAR PUMP DISTRIBUTORS (USA), INC., ("GEAR PUMP"), the defendant, is an Ohio corporation.  GEAR PUMP was a subsidiary of DOSCO GPM HOLDINGS (PTY) Ltd. ("Dosco"), a South African corporation located in Gautang, South Africa.  GEAR PUMP was established to distribute product manufactured by Gear Pump Manufacturing (PTY) Ltd.("GPM"), a South African corporation located in Cape Town, South Africa.  GPM was in the business of manufacturing and selling hydraulic pumps and related components.

b.     Guyan International, Inc. (dba Permco) ("Permco") was a West Virginia corporation.  Permco maintained its principal place of business in Streetsboro, Ohio.  Permco was in the business of manufacturing and selling hydraulic gear pumps and motors, flow dividers, intensifiers, and accessories.  Permco's products were sold and shipped, and intended to be sold and shipped, in interstate and foreign commerce.  At all relevant times, Permco took steps to safeguard certain of its confidential and proprietary business information.  These measures included, but were not limited to, instructions to employees regarding the dissemination of such information and restricting access to

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 6 of 21

certain information to a limited number of high-level employees through password protection and internal policy memoranda.

        c.     From in or about December 2003, through in or about October 2004, in the Northern District of Ohio, Eastern Division, and elsewhere, GEAR PUMP DISTRIBUTORS (USA), INC. (fka Dosco GPM Holdings), the defendant. did devise a scheme and artifice to defraud by depriving Permco of its intangible right to honest services of an executive at Permco, to wit: defendant caused the executive at Permco to transmit by means of wire communication in interstate and foreign commerce certain proprietary, confidential, and other Permco business information, and received from the executive at Permco by means of wire communication in interstate and foreign commerce certain proprietary, confidential, and other Permco business information, without authorization of Permco, an effect of which could allow the defendant to gain a competitive advantage over Permco.  This information included, but was not limited to: internal price lists for both the U.S. and European markets, internal parts cost lists, copies of internal Permco e-mails. internal sales reports, internal customer trip reports, Permco customer purchase specifications, business opportunities of Permco, and Permco supplier information.

*Defendant's Initials*: _____

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 7 of 21

d.      Beginning in approximately 2001, DOSCO/GEAR PUMP, the defendant, began

exploring the opportunity of increasing its presence in the United States market. In or

about December 2003, DOSCO/GEAR PUMP approached the executive at Permco about

the possibility of setting up its operations in the United States. DOSCO/GEAR PUMP

made a formal offer of employment to the executive at Permco in September 2004, to

take effect December 2004; in reality, the executive began working with DOSCO/GEAR

PUMP prior to receiving a formal employment offer.

        e.      It was part of the scheme and artifice that representatives of the

defendant would have secret meetings with the executive at Permco to discuss GEAR

PUMP's plans for the United States market. While still a full-time employee at Permco,

the executive at Permco took two trips to South Africa to discuss his/her role in the

defendant's business development in the United States. During one of the trips, the

executive at Permco was introduced to other executives and shareholders of Dosco as

GEAR PUMP's representative in the United States. In one instance, representatives of

the defendant met the Permco executive at a trade show in Dallas, Texas. In order to

avoid detection of the existing relationship between the Permco executive and the

defendant, the representatives of GEAR PUMP stayed, and held the meeting at, a hotel

other than where Permco representatives were staying. On or about April 14, 2004, the

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 8 of 21

executive at Permco sent an e-mail to a representative at GEAR PUMP which stated: "We will be staying at the Hyatt Regency at Reunion Arena in Dallas. There will be 6 people there from Permco . . . The only problem with you staying at the same hotel would be it being obvious if we spent time together in the bar there. I could leave my hotel and go to yours easier and probably not be seen by the other Permco people . . . I'm anxious to finalize some things while in Dallas . . ." On or about April 1, 2004, another representative of GEAR PUMP sent an e-mail to the executive at Permco regarding the trade show in Dallas in which he stated: "It will be great to see you in Dallas but I promise not to come onto your stand and greet you like a long lost buddy."

       f.    As part of the scheme and artifice, the defendant would receive and solicit certain confidential, proprietary and other Permco information while the executive was still a full-time employee of Permco who owed a duty of honest services to Permco. An effect of this scheme was to cause Permco identifiable economic harm in that the executive's breach of honest services to Permco could allow the defendant an unfair competitive advantage over Permco as it entered the United States market with the knowledge of Permco costs, pricing, and customers while in direct competition with Permco. In order to avoid detection, the executive at Permco would e-mail the information from his/her office e-mail address to his/her personal e-mail address and then

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 9 of 21

forward the information from his/her personal e-mail account to GEAR PUMP in South

Africa.

        g.     It was further part of the scheme and artifice that representatives of

Dosco would travel to the United States and take surreptitious, unauthorized tours of the

Permco plant in Streetsboro, Ohio.  In order to avoid detection, the executive at Permco

conducted these tours after business hours and on the weekends.  The executive at

Permco would introduce the Dosco/GEAR PUMP representatives as a customer, rather

than disclose the fact that direct competitors of Permco were visiting the facility.  While

there, a representative of Dosco/GEAR PUMP photographed the internal workings of the

Permco plant.

        h.     It was further part of the scheme and artifice that the executive at

Permco, while a full-time Permco employee, assisted in the creation of Dosco's United

States operations in Ohio including: locating real estate, seeking tax incentives from local

government officials, and setting up a corporation with its principal place of business at

his/her home address.

        i.     Some of the electronic mail (e-mail) that were part of the fraudulent

scheme include, but are not limited to, the following:

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 10 of 21

(1)     On or about January 28, 2004, an executive at Dosco/GEAR PUMP e-mailed the

executive at Permco and solicited information on a Permco customer: "Do you have any

information on winch gears. i.e. number of teeth, pitch circle dia, gear modulus or DP,

outside diameter etc." This e-mail was sent from the Dosco offices in South Africa to the

Northern District of Ohio.

(2)     On or about January 30, 2004, the executive at Permco e-

mailed Permco parts price sheets from the Northern District of Ohio to representatives at

Dosco/GEAR PUMP in South Africa. The e-mail stated: "Please find attached parts price

sheets. They represent Permco LIST prices. Permco commonly gives –% off and

occasionally gives –% off these. This represents ALL Permco parts, part numbers at this

time. I hope you find this helpful. Regarding [a Permco customer]: I am getting as much

information up for you as I can as soon as I can. For your information, they currently buy

winch motors from Permco. They are a pretty good customer, and buy more winch

motors from us than any body else."

(3)     On or about February 26, 2004, the executive at Permco e-

mailed an internal price list for the European market from his/her office in the Northern

District of Ohio to representatives at Dosco/GEAR PUMP in South Africa. The e-mail

stated: ". . . here is European pricing. Everybody pays the same prices. [A Permco

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 11 of 21

customer] pays the prices in the last column. These are for parts only, I'm getting unit pricing for you ASAP. I hope this helps."

    (4)    On or about February 28, 2004, a representative of Dosco/GEAR PUMP in South Africa e-mailed the executive at Permco in his/her office in the Northern District of Ohio with follow-up questions on the European price list. The e-mail stated: "Thanks it helps. Do they pay the last column or do they pay the Europe price less discount."

    (5)    On or about March 9, 2004, the executive at Permco e-mailed an internal Permco memorandum regarding a price increase due to steel costs from the Northern District of Ohio to a representative of Dosco/GEAR PUMP in South Africa.

    (6)    On or about March 9, 2004, the executive at Permco e-mailed a representative of Dosco/GEAR PUMP in South Africa from his/her office in the Northern District of Ohio documenting his/her efforts to steer business away from Permco and to GEAR PUMP. The e-mail stated, in part: "He knows there is a limited number of suppliers to which he can turn. I told him I didn't think Permco had the capacity or willingness to take on such a large customer. We also suggested GPM as a possible supplier and I suggested he contact you . . ."

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 12 of 21

(7)     On or about April 15, 2004, the executive at Permco e-mailed a spreadsheet containing confidential internal cost and price for Permco in the United States from the Northern District of Ohio to representatives of GEAR PUMP at their Dosco e-mail accounts in South Africa.  In a follow-up e-mail sent on or about April 16, 2004, the executive stated: "I was reflecting on what I had sent you and thought you might indeed like some explanation.  I sent you two spreadsheets.  One of them (PPN-withsupp) is a list of all PARTS with Permco's suppliers listed along with LIST and COST. . . ."

(8)     On or about May 26, 2004, the executive at Permco e-mailed an internal Permco memorandum regarding a Permco's sales efforts from the Northern District of Ohio to a representative of Dosco/GEAR PUMP in South Africa.  The e-mail states, in part: "I thought you might enjoy seeing this.  It is a note to the outside sales people from Rick, the president of Permco. . . "

(9)     On or about May 27, 2004, the executive at Permco e-mailed a spreadsheet containing confidential Permco supplier information from the Northern District of Ohio to representatives of GEAR PUMP at the Dosco offices in South Africa  The e-mail stated: "See attached file.  Fasteners and plastic plug suppliers are noted in red.  All suppliers are listed so there are a large number of entries, but I hope you can

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 13 of 21

decipher what you might need. If you have questions please e-mail me and I will respond ASAP."

(10) On or about June 10, 2005, the executive at Permco e-mailed an internal Permco memorandum regarding a Permco's winch motor business from the Northern District of Ohio to a representative of Dosco/GEAR PUMP in South Africa.

(11) On or about August 20. 2004, the executive at Permco e-mailed an internal Permco memorandum regarding Permco's competition with GEAR PUMP in the European market to representatives of GEAR PUMP at the Dosco offices in South Africa.

(12) On or about September 8. 2004. the executive at Permco e-mailed an internal Permco Sales Call Report to representatives of GEAR PUMP in South Africa, from the Northern District of Ohio. The e-mail states: "This is this week's sales call reports from our guy in the upper Mid West. He was working in Minnesota and I thought you should see what he was told from a [Permco customer] salesman. Please scroll down to the red type."

(13) On or about September 8. 2004, an executive at GEAR PUMP in South Africa e-mailed the executive at Permco in the Northern District of Ohio

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 14 of 21

requesting certain drawings. The e-mail states: "In terms of the smaller C101, (the G101-
I think?), could you get us drawings?"

(14)    On or about September 8, 2004, an executive at GEAR PUMP
in South Africa e-mailed an executive at Permco in the Northern District of Ohio
requesting confidential internal Permco information regarding Permco's pump volume by
model and part number.

(15)    On or about September 14, 2004, the executive at Permco e-
mailed information describing Permco's rust prevention process from the Northern
District of Ohio to representatives of GEAR PUMP in South Africa. In the e-mail, the
Permco executive provided the contact information for Permco's specially supplied rust
inhibitor and stated: " . . . let's talk about how we might investigate them supplying us. It
would be too curious as to how you got their name."

## WAIVER OF APPEAL AND POST-CONVICTION ATTACK

13.    Defendant acknowledges having been advised by counsel of Defendant's
rights, in limited circumstances, to appeal the conviction or sentence in this case,
including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction
or sentence collaterally through a post-conviction proceeding, including a proceeding
under 28 U.S.C. § 2255. The Defendant expressly waives those rights, except as reserved

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 15 of 21

below.  Defendant reserves the right to appeal:  (a) any punishment in excess of the

statutory maximum; (b) any sentence to the extent it exceeds the maximum of the

sentencing range determined under the advisory Sentencing Guidelines in accordance

with the sentencing stipulations and computations in this agreement, using the Criminal

History Category found applicable by the Court.  Nothing in this paragraph shall act as a

bar to the Defendant perfecting any legal remedies Defendant may otherwise have on

appeal or collateral attack respecting claims of ineffective assistance of counsel or

prosecutorial misconduct.

## RESTITUTION

14.    Defendant agrees to make full restitution, on a joint and several basis,

payable immediately on such terms and conditions as the Court may impose, for the

losses caused by Defendant's relevant conduct in this case, as defined under Guideline

§ 1B1.3.  The parties anticipate that the restitution obligation will be approximately

$95,000.  Defendant understands, however, that the final determination will be made by

the Court and that the amount may be higher.  Defendant agrees not to seek the discharge

of any restitution obligation, in whole or in part, in any present or future bankruptcy

proceeding.

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 16 of 21

## SENTENCING STIPULATIONS AND AGREEMENTS

15.  **Stipulated Guideline Computation.**  The parties agree that the following calculation, from the November 1, 2004, Sentencing Guideline Manual. represents the correct computation of the applicable offense level in this case, prior to any adjustment for acceptance of responsibility.  The parties agree that no other Sentencing Guideline adjustments apply.

| Count | | Guideline § |
|---|---|---|
| Base offense level | 7 | § 2B1.1(a)(1) and § 8C2.3 |
| Loss of More than $70,000 | +8 | § 2B1.1(b)(1)(E) |
| **Subtotal before Acceptance of Responsibility** | **15** | |

16.  **Acceptance of Responsibility.**  The USAO has no reason to believe at this time that Defendant has not clearly and affirmatively accepted personal responsibility for Defendant's criminal conduct.  Defendant understands, however, that the Court will determine acceptance of responsibility based on Defendant's overall conduct as of the date of sentencing.  Should the Defendant be granted the full 2-level reduction for its acceptance of responsibility, the total adjusted offense level would then be a level **13**.

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 17 of 21

17.    **Stipulation as to Fine and/or Restitution.**  The parties agree that the defendant will pay a fine amount of $190,000, in addition to restitution, which represents approximately twice the pecuniary loss that resulted from the offense, pursuant to 18 U.S.C. § 3571(d).

## COOPERATION

18.    Defendant agrees to cooperate fully with the United States of America and any other state or local government in investigations and prosecutions, as and when requested by the USAO.  Such cooperation shall include representatives of the defendant providing all information, attending all interviews, testifying before all tribunals, providing all documents and records, and providing all other forms of cooperation requested by government agents and prosecutors.  Such cooperation also includes the obligation of the defendant's representatives to provide truthful and complete information and the obligation not to commit any additional crimes.  Defendant understands that if its representatives provide any false or misleading information, documents, or testimony, refuse to testify or otherwise fail to cooperate, or commit any additional crimes, such conduct will constitute a breach of this agreement.  In addition, Defendant and its representatives may be subject to separate prosecution for such criminal conduct, and nothing in this agreement will preclude the use

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 18 of 21

of Defendant's representatives' sworn or unsworn statements against Defendant or its representatives in this or any other prosecution.

## OTHER PROVISIONS

19. **Agreement Silent as to Matters Not Expressly Addressed.** This agreement is silent as to all aspects of the determination of sentence not expressly addressed herein and the parties are free to advise the Court of facts and to make recommendations to the Court with respect to all aspects of sentencing not agreed to herein.

20. **Sentencing Recommendations Not Binding on the Court.** Defendant understands that the recommendations of the parties will not be binding upon the Court, that the Court alone will decide the applicable sentencing range under the advisory Sentencing Guidelines, whether there is any basis to depart from that range or impose a sentence outside of the Guidelines, and what sentence to impose. Defendant further understands that once the Court has accepted Defendant's guilty plea, Defendant will not have the right to withdraw such a plea if the Court does not accept any sentencing recommendations made on Defendant's behalf or if Defendant is otherwise dissatisfied with the sentence.

21. **Consequences of Breaching the Plea Agreement.** Defendant understands that if Defendant breaches any promise in this agreement or if Defendant's guilty plea or conviction in this case are at any time rejected, vacated, or set aside, the USAO will be

*Defendant's Initials:* ____

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 19 of 21

released from all of its obligations under this agreement and may institute or maintain any

charges and make any recommendations with respect to sentencing that would otherwise be

prohibited under the terms of the agreement. Defendant understands, however, that a breach

of the agreement by Defendant will not entitle Defendant to withdraw, vacate, or set aside

Defendant's guilty plea or conviction.

22.     **Agreement not Binding on other Jurisdictions and Agencies.** Defendant

understands that this plea agreement is binding only on the United States Attorney's Office

for the Northern District of Ohio (USAO). It does not bind any other United States

Attorney, any other federal agency, or any state or local government.

23.     **Defendant is Satisfied with Assistance of Counsel.** Defendant makes the

following statements: Defendant acknowledges receiving the assistance of counsel from

attorney Donald S. Scherzer concerning this plea agreement. Defendant has fully discussed

with its attorney all of its Constitutional trial and appeal rights, the nature of the charges, the

elements of the offenses the United States would have to prove at trial, the evidence the

United States would present at such trial, the Sentencing Guidelines, and the potential

consequences of pleading guilty in this case. It has had sufficient time and opportunity to

discuss all aspects of the case in detail with its attorney and has told its attorney everything it

knows about the charges, any defense that it may have to those charges, and all financial

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 20 of 21

circumstances in possible mitigation of sentence. Its attorney has done everything it has

asked its attorney to do and it is satisfied with the legal services and advice provided to it by

its attorney and believe that its attorney has given it competent and effective representation.

24. **Agreement Is Complete and Voluntarily Entered.** Defendant and

Defendant's undersigned attorney state that this agreement constitutes the entire agreement

between Defendant and the USAO and that no other promises or inducements have been

made, directly or indirectly, by any agent or representative of the United States government

concerning any plea to be entered in this case. In particular, no promises or agreements

have been made with respect to any actual or prospective civil or administrative proceedings

or actions involving Defendant, except as expressly stated herein. In addition, Defendant

states that no person has, directly or indirectly, threatened or coerced Defendant to do or

refrain from doing anything in connection with any aspect of this case, including entering a

plea of guilty.

25. **Authority of GEAR PUMP Distributors (USA), Inc., President to Enter**

**into Plea Agreement.** President of GEAR PUMP Distributors (USA), Inc., Raymond

Moore, is authorized to enter into this Plea Agreement on behalf of Defendant as evidenced

by the Resolution of the Board of Directors of the Defendant attached to, and incorporated

by reference in, this Plea Agreement.

*Defendant's Initials:*

Plea Agreement of GEAR PUMP DISTRIBUTORS (USA), INC. - page 21 of 21

## SIGNATURES

**Defendant:**  I have read this entire plea agreement on behalf of GEAR PUMP Distributors (USA), Inc. and have discussed it with its attorney.  I have initialed each page of the agreement to signify that I have read, understood, and approved the provisions on that page on behalf of GEAR PUMP Distributors (USA), Inc.  GEAR PUMP Distributors (USA), Inc. is entering this agreement voluntarily and of its own free will.  No threats have been made to GEAR PUMP Distributors (USA), Inc., nor is it under the influence of anything that could impede its ability to understand this agreement.

_____                    28/ 02/ 2006
Raymond Moore                                        Date
GEAR PUMP Distributors (USA), Inc.

**Defense Counsel:**  I have read this plea agreement and concur in Defendant pleading in accordance with terms of the agreement.  I have explained this plea agreement to Defendant, and to the best of my knowledge and belief, Defendant understands the agreement.

_____                    3| 8| 06
Donald S. Scherzer, Esq.                            Date

**United States Attorney's Office:**  I accept and agree to this plea agreement on behalf of the United States Attorney for the Northern District of Ohio.

_____                    3|14|06
Justin J. Roberts                                   Date
Assistant U. S. Attorney
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113-1852

**APPROVED:**
_____                    4|5|06
UNITED STATES DISTRICT JUDGE                        Date

*Defendant's Initials*:  _____

## ACTION BY UNANIMOUS WRITTEN CONSENT
### OF THE SOLE DIRECTOR OF
### GEAR PUMP DISTRIBUTORS (USA), INC.

The undersigned, constituting the sole director of GEAR PUMP DISTRIBUTORS (USA), INC., an Ohio corporation (the "Corporation"), acting pursuant to the authority of §1701.54 of the Ohio Revised Code, hereby consents to the adoption of the following resolution and approves and adopts such resolution with the same force and effect as if it was approved and adopted at a duly constituted meeting of the directors of the Corporation:

**RESOLVED,** The Corporation is authorized to waive Indictment, enter into the Plea Agreement (attached hereto as Exhibit A) and Plead Guilty to the charges in the criminal Information (attached hereto as Exhibit B) in the criminal case styled United States of America v. Gear Pump Distributors (USA), Inc.

**FURTHER RESOLVED,** that Raymond Moore, President, is authorized on behalf of the Corporation to execute the Plea Agreement (attached hereto as Exhibit A) and the Waiver of Indictment (attached hereto as Exhibit C) in the criminal case styled United States of America v. Gear Pump Distributors (USA), Inc.

**IN WITNESS WHEREOF,** the undersigned has caused this Action Without Meeting to be effective as of the 20th day of February, 2006.

SOLE DIRECTOR:

Raymond Moore